Charlotte E. GOODRICH, a/k/a Charlotte E. Tyndall, Appellant (Plaintiff),

v.

Albert L. SEAMANDS and Janet M. Seamands, Appellees (Third Party Defendants).

No. 93–36.

Supreme Court of Wyoming.

March 17, 1994.

Robert N. Williams, Meyer and Williams, Jackson and Donna Sears, Sears Law Office, Lander, for appellant.

R.A. Nicholas, Hettinger & Leedy, Riverton, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Appellant Charlotte E. Goodrich (Goodrich) sued appellees Albert L. and Janet M. Seamands (the Seamandses) for injuries Goodrich suffered when a ceiling tile and ceiling fan fell on her in a building previously owned by the Seamandses. Goodrich alleged that the Seamandses were negligent in failing to discover, disclose and warn of a latent defect in the construction of the ceiling and the fan. The trial court granted summary judgment to the Seamandses based on Wyoming's statute of repose, W.S.1977, 1–3–111, and Goodrich appeals.

We affirm.

Goodrich presents two issues:

1. Is the 10 year statute of repose found in § 1–3–111 W.S.1977 applicable to the facts of this case?

2. Does the statute of repose provide immunity to an owner of real property for negligently failing to disclose injury causing defects to a subsequent purchaser when such owner would otherwise be liable under § 353 Restatement of Torts, 2d?

### FACTS

In 1977, the Seamandses erected a small commercial building in Lander, Wyoming to provide space for their daughter's health food store and their son-in-law's hair salon. The building's shell, i.e., foundation, exterior walls, roof and insulation, was constructed by an independent contractor. The Seamandses, however, hired their son-in-law, Ron Teague (Teague), to oversee the completion of the interior of the building. Teague built the interior walls and put in the hanging tile ceiling, but he hired sub-contractors to install electricity, plumbing, and heating. The ceiling fan in the women's bathroom was installed by the electrical subcontractor.

After completion, the Seamandses leased the various spaces in the new building to different parties for a period of ten years. During that ten-year period the structure of the building, both the interior and the exterior, remained substantially and materially unaltered. The sole complaints about the building involved tenant disputes over the temperature in the building and a door which apparently would stick. Ceiling tiles, in rooms other than the women's bathroom, would occasionally have to be slightly maneuvered after being popped from their frames due to air being forced into a room from a shutting door.

From the spring of 1987 until December of 1989, the Seamandses leased most of the building to the local branch of the Veterans of Foreign Wars (VFW). In December 1989, the Seamandses sold the building to the VFW.

On a Saturday afternoon in late September of 1990, Goodrich, while a patron at the VFW club, was struck by a falling ceiling tile and ceiling fan as she entered the women's bathroom in the building. Following the accident, a mechanical engineer, employed by the VFW to determine the cause of the accident, reported:

> The ceiling failure and resultant potential for physical harm involves a combination of substandard installation of the exhaust fan, the [fibrous ductboard] ducting, and the lay-in ceiling grid support.

> \* \* \* \* \* \*

> If all of these three different items had been installed in accordance with governing Code requirements and recognized industry/construction standard practices, and had been properly and securely supported independently of each other from the building structure above, neither the duct joints or ceiling would have failed, nor could the exhaust fan have fallen.

All the parties agree that the defects in the ceiling, the fan, and the ducting were hidden

above the ceiling tiles and thus not readily apparent.

As a result of the accident and due to her injuries, Goodrich filed this suit against VFW and the Seamandses. VFW and Goodrich settled, and VFW was dismissed from the case October 21, 1992. Meanwhile, the Seamandses moved for summary judgment on September 1, 1992, asserting the statute of repose and claiming no negligence. After a hearing, the trial court granted summary judgment to the Seamandses based upon the statute of repose.

## DISCUSSION

When reviewing the trial court's grant of summary judgment, we examine the case in the same manner as the trial court. Our task requires that we make a dual finding that no genuine issue of material fact exists, and that the prevailing party was entitled to judgment as a matter of law. When considering questions of law, we accord no special deference to the [trial] court's determination. [citations omitted] *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094, 1097 (Wyo.1993) (quoting *Davidson v. Sherman*, 848 P.2d 1341, 1343 (Wyo.1993)). Additionally, we may sustain summary judgment on any legal ground appearing in the record. *Id.* (citing *Deisch v. Jay*, 790 P.2d 1273, 1278 (Wyo.1990)).

The statute of repose provides:

(a) Unless the parties to the contract agree otherwise, no action to recover damages, whether in tort, contract, indemnity or otherwise, shall be brought more than ten (10) years after substantial completion of an improvement to real property, against any person constructing, altering or repairing the improvement, manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning, surveying, supervision, observation or management of construction, or administration of construction contracts for:

(i) Any deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or

observation or management of construction;

(ii) Injury to any property arising out of any deficiency listed in paragraph (i) of this subsection; or

(iii) Injury to the person or wrongful death arising out of any deficiency listed in paragraph (i) of this subsection.

W.S. 1–3–111 (1988). Goodrich alleges that the statute does not apply to her cause of action against the Seamandses, and therefore cannot bar the action because the Seamandses do not fall into the class of persons protected by the statute and because the basis for her cause of action is not barred by the statute.

Based upon the plain language of the statute, one of the requirements necessary for it to apply is that the action sought to be barred be one "for: [a]ny deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observation or management of construction." Goodrich's cause of action against the Seamandses is based upon the Seamandses' alleged failure to discover, disclose and warn of a dangerous condition of which they knew or should have known. It is not, and could not be, based upon a claim that the Seamandses negligently constructed the building.

The alleged negligent action of the Seamandses (failure to discover, disclose and warn) occurred after construction was completed and is not a "deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observation or management of construction." Therefore, the statute of repose is not applicable to Goodrich's cause of action for negligent failure to maintain and inspect the property and discover and disclose a dangerous condition which was known or should have been known.

This construction of the statute of repose is supported by legislative history. In 1981, when the statute of repose was amended, the legislature included the following language:

(a) The purpose of this law is to recognize that:

\* \* \* \* \* \*

(ii) It is in the public interest to set a period of time following the substantial completion of the project after which *no action may be brought for errors and omissions in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observations or management of improvements to real estate,* whether or not these errors and omissions have resulted or may result in injury[.]

1981 Wyo.Sess.Laws ch. 166 § 2 (emphasis added). The emphasized language demonstrates that the legislature intended that the statute of repose apply as a bar to actions alleging "errors and omissions" occurring during the process of completing the improvement and not to actions which allege "errors and omissions" which occur in the maintenance of the improvement after it is completed. Goodrich's action alleges that the Seamandses made "errors and omissions" in maintaining the improvement—the building—after it was completed.

Since we have determined that the statute of repose does not bar Goodrich's action against the Seamandses, then basing a grant of summary judgment on the statute of repose was incorrect as a matter of law; however, the record reflects that summary judgment for the Seamandses is sustainable because, as a matter of law and based on the undisputed material facts, the Seamandses owed no duty to Goodrich.

 Essential to any negligence cause of action is proof of facts which impose a duty upon defendant. See, *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 931 (Wyo. 1981). The question of the existence of a duty is a matter of law for the court to decide. *Id.,* at 932. A duty exists where, "upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." Prosser and Keeton on Torts § 37 at 236 (5th ed. 1984).

The rule of caveat emptor (let the buyer beware) has never been strictly applied by this court when dealing with vendor liability. *ABC Builders, Inc.,* 632 P.2d at 932; see § 352 Restatement, Second, Torts for rule of caveat emptor. In *ABC Builders, Inc.,* we adopted § 353 of the Restatement, Second, Torts to define the duty of a vendor or grantor of real estate. *ABC Builders, Inc.,* 632 P.2d at 932.

Section 353 of the Restatement, Second, Torts provides:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Thus, a vendor has a duty to disclose the condition described in subsection (1) if "the vendee does not know or have reason to know of the condition or the risk," "the vendor knows or has reason to know of the condition," the vendor "realizes or should realize the risk involved," and the vendor "has reason to believe that the vendee will not discover the condition or realize the risk." See *Comments,* § 353 Restatement, Second, Torts and Prosser and Keeton § 64 at 447–48. Concerning the requirement of actual or constructive knowledge by the vendor, the comments to § 353 state:

c. It is not, however, necessary that the vendor have actual knowledge of the condi-

tion, or that he be in fact aware that it involves an unreasonable risk of physical harm to persons on the land. It is enough that he has reason to know that the condition exists and is dangerous, as "reason to know" is defined in § 12(1)—that is to say, *that he has information from which a person of reasonable intelligence, or his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist,* and would realize that its existence will involve an unreasonable risk of physical harm to persons on the land.

§ 353 Restatement, Second, Torts (emphasis added).

Goodrich admits that the Seamandses were not actually aware of the defective ceiling, fan or ducting. Goodrich asserts, however, that several facts support an inference that the Seamandses had reason to know of the defects and, therefore, that a genuine issue exists concerning whether the Seamandses had "reason to know" of those defects.

■ First, Goodrich argues that Mr. Seamands' testimony that occasionally the ceiling tiles would pop out of their frames because of forced air from doors shutting is sufficient to demonstrate that the Seamandses had "reason to know" of the defects. Knowledge of the occasional movement of ceiling tiles from forced air *in rooms other than the women's restroom* is not sufficient for a person of reasonable intelligence to infer that the ceiling tile, fan, and duct in the women's bathroom were improperly installed and created an unreasonable risk of harm to others. See *Heinsohn v. Motley,* 13 Kan. App.2d 66, 761 P.2d 796 (1988) (affirming summary judgment in favor of vendor of cabin and against vendee, who had sued for injuries from defective propane stove in cabin, because vendee failed to establish that vendor had reason to know of the defects or the risk involved); see also Emile F. Short, Annotation, *Liability of Vendor or Grantor of Real Estate for Personal Injury to Purchaser or Third Person Due to Defective Condition of Premises,* 48 A.L.R.3d 1027 (1973).

■ Second, Goodrich asserts that the Seamandses are charged with the same knowledge as Teague, who was hired by the Seamandses to complete the interior of the building, and since he installed the ceiling then the Seamandses had "reason to know" of the defects. Because he has been deceased for several years, the evidence does not reflect what Teague knew or should have known concerning the ceiling, the fan or the ducting. Simply because Teague installed the ceiling tile does not demonstrate that a person of reasonable intelligence in the Seamandses' position had information from which they could infer the existence of these defects.

■ Lastly, Goodrich asserts that the fact the Seamandses' lease to the VFW required the Seamandses to maintain the common areas of the building, and the fact that the Seamandses owned the building for twelve years shows that the Seamandses had "reason to know" of the defects. The evidence demonstrated that there were never any material complaints or problems with the ducting, the fan, or the ceiling tiles during those twelve years. Since there were no material complaints or problems, the Seamandses never had reason to look above the tiles and discover any defect. Neither of these facts shows that the Seamandses had information from which they could infer the existence of the defects.

### CONCLUSION

Necessary to every negligence action is proof that the defendant owed the plaintiff a duty. In this case the Seamandses had a duty to disclose only if they knew or had reason to know of the defects. Goodrich failed, however, to establish that the Seamandses had either actual or constructive knowledge of the defects and, therefore, failed to establish a duty to disclose the defective ceiling, fan and ducting. The failure to prove duty, which is a question of law, makes summary judgment in favor of the defendants, the Seamandses, proper.

We affirm.