Gordon T. DUBRAY and Linda
Dubray, husband and wife,
Appellants (Plaintiffs),

v.

Edward G. HOWSHAR and Mary
Virginia Howshar, Appellees
(Defendants).

No. 93–244.

Supreme Court of Wyoming.

Oct. 28, 1994.

John J. Maier, Torrington, for appellants.

Frank J. Jones, Wheatland, for appellees.

* Retired July 6, 1994.

Before GOLDEN, C.J., THOMAS, CARDINE * and MACY, JJ., and BROWN, J., Retired.

CARDINE, Justice, Retired.

This case involves an action for personal injury damages arising out of a gunshot wound suffered by Gordon Dubray while patronizing a bar and restaurant in Torrington, Wyoming. The plaintiffs, a married couple, appeal the trial court's grant of summary judgment to the sellers by contract for deed of the bar and restaurant.

We affirm.

## I. ISSUES

Appellants, plaintiffs below, raise one issue:

Did the trial court err in granting summary judgment to appellees when appellees are not entitled to judgment as a matter of law and when genuine issues of material fact exist?

## II. FACTS

On January 3, 1989, Edward G. Howshar and Mary Virginia Howshar (Howshars), husband and wife, purchased what is now known as the Sugar Hill Restaurant and Lounge (Sugar Hill) located in Torrington, Wyoming. In November 1989, the Howshars orally leased Sugar Hill to Louis, Steve, and Alice Carabajal for a term of six months with an option to renew the lease. On December 6, 1989, Edward Howshar obtained a retail liquor license in his name for Sugar Hill. Also on December 6, 1990, Alice Carabajal (Carabajal) exercised her option to renew the lease from the Howshars. The second lease granted Carabajal an option to purchase Sugar Hill.

On November 8, 1990, Edward Howshar successfully renewed the liquor license for Sugar Hill. That license was valid from December 6, 1990, until December 5, 1991, and was issued to Edward Howshar. On September 30, 1991, Edward Howshar again applied for renewal of the liquor license.

On October 24, 1991, Carabajal exercised her option to purchase Sugar Hill and entered into an installment agreement with the Howshars. The terms of that agreement provided: (1) that Carabajal would pay $10,000.00 down, make monthly installments until principal and interest were satisfied, pay property taxes after the date of the agreement, insure the premises, and maintain the premises in good condition; and (2) that the Howshars provide merchantable title, execute a warranty deed, and give Carabajal possession of the premises. The agreement also contained the following escrow clause:

9. *ESCROW PROVISION:* A copy of this Agreement, a Warranty Deed executed by Seller, a Quitclaim Deed executed by Purchaser, the abstract of title or title insurance policy, the re-assignment of liquor license and the casualty insurance policy as provided for herein shall be placed in escrow at Tri–County Federal Savings and Loan Association, Wheatland, Wyoming, without liability to said agent except the duty to account. All payments due hereunder shall be paid to the escrow agent for credit to Seller. Upon full performance of the terms of this Agreement by Purchaser, the escrow agent shall deliver all documents to the Purchaser. In the event of any default by Purchaser and upon written demand therefor, all documents shall be delivered to Seller.

In addition, under the agreement the Howshars retained the right to inspect Sugar Hill to insure that Carabajal properly maintained the premises, and they retained a veto power over any transfer or assignment of Sugar Hill or the agreement.

Also on October 24, 1991, the Howshars executed an assignment of Sugar Hill's liquor license to Carabajal. The assignment was made subject to Carabajal's ability to obtain approval for the transfer and required Carabajal to promptly apply for that approval. On November 6, 1991, after the installment sales agreement had been executed, Sugar Hill's liquor license was renewed and issued again in Edward Howshar's name.

Sometime during the evening of January 18, 1992, and the early morning hours of the next day, Gordon Dubray was shot in the right leg by an intoxicated Jose Luis Paramo–Quiroz (hereinafter the gunman) while at Sugar Hill. On January 12, 1993, Gordon Dubray and his wife, Linda Dubray, filed this action against Sugar Hill's owner before the Howshars, the Howshars, Carabajal, the gunman and the owner of the gun.

In their amended complaint, the Dubrays alleged that the Howshars were negligent in supervising Sugar Hill and for entrusting the control and operation of Sugar Hill and its liquor license to Carabajal, that the Howshars violated duties imposed by liquor licensing statutes, and that the Howshars were liable under nuisance statutes.

On May 28, 1993, the Howshars moved for summary judgment and filed supporting affidavits and exhibits. After the Dubrays filed a memorandum opposing summary judgment and supporting documents, the trial court, on September 15, 1993, granted the Howshars' motion for summary judgment and a W.R.C.P. 54(b) certification permitting this appeal. The case against the remaining defendants is still pending in the trial court.

## III. DISCUSSION

We sustain summary judgment if: (1) there are no genuine issues of material fact, and (2) based on those undisputed material facts the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56. Success in negligence actions hinges on proof of four elements—defendant's duty, defendant's breach of that duty, that the breach proximately caused the alleged injury, and the alleged injury. The failure to establish any one of the four elements is fatal to a claim of negligence. *Claassen v. Nord,* 756 P.2d 189, 194 (Wyo.1988). The Howshars are, therefore, entitled to summary judgment if the material facts are undisputed and those undisputed facts demonstrate that at least one of the elements of negligence is absent.

The existence of the first element, duty, is a "matter of law for the court to decide." *Goodrich v. Seamands,* 870 P.2d 1061, 1064 (Wyo.1994) (citing *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 931 (Wyo. 1981)).

### Common Law Claim

The Dubrays contend that the Howshars have a duty, as holders of legal title to Sugar Hill and as holders of the liquor license, to exercise reasonable care to avoid injuries to others while they are at Sugar Hill. The Howshars, however, assert that because they sold Sugar Hill before Dubray was shot they owed no duty to the Dubrays.

■ This court has adopted § 353 of the Restatement, Second, Torts to define the standard of care owed by vendors of real property. See *ABC Builders, Inc.*, 632 P.2d at 932; *Goodrich*, 870 P.2d at 1064. When the purchaser of land (vendee) takes possession of the land, the seller (vendor) has a duty to disclose any natural or artificial condition that creates an unreasonable risk to persons on the land if: (1) the vendee does not know or have reason to know of the condition or the risk, (2) the vendor knows or has reason to know of the condition, (3) the vendor realizes or should realize the risk involved, and (4) the vendor has reason to believe that the vendee will not discover the condition or realize the risk. *Goodrich*, 870 P.2d at 1064 (citing Restatement, Second, Torts § 353).

■ The Dubrays contend that the Howshars are not "vendors" but should be classified as owners or lessors of Sugar Hill and subject to a duty of reasonable care under the circumstances because they retained sufficient control over Sugar Hill under the installment contract and by virtue of the liquor license. Legal treatises agree that a "vendor" of real property is one "who parts with title, possession and control" of that property. W. Page Keeton, Prosser and Keeton On Torts § 64 at 446 (5th ed. 1984), Restatement, Second, Torts § 351 comment a. Thus, we must determine whether the Howshars have parted with title, possession and control of Sugar Hill.

It is undisputed that the Howshars no longer possess Sugar Hill and that they executed a warranty deed to Carabajal, which is held in escrow. This court has held:

> When property is sold under a valid contract and an escrow created, *the purchaser under the contract is the equitable owner* and assumes all the risk, including liability of ownership, while the seller holds legal title in trust for the purchaser as security for the performance of the contract.

*Mayflower Restaurant, Co. v. Griego*, 741 P.2d 1106, 1113 (Wyo.1987) (emphasis added). Therefore, in addition to no longer being in possession of Sugar Hill, the Howshars no longer hold title because Carabajal is the equitable owner.

The Dubrays contend that the Howshars retained control over Sugar Hill and should be treated as owners or lessors because Mr. Howshar's name remains on the liquor license and because the installment contract requires Carabajal to carry insurance, allows for "reasonable inspection," and limits transferability of Sugar Hill. In *Anderson v. Cosmopolitan Nat'l Bank of Chicago*, 54 Ill.2d 504, 301 N.E.2d 296 (1973), the Supreme Court of Illinois wrote:

> [T]he argument is that those who sell real estate upon installment contracts should be subjected to a different and more strict liability than is imposed upon other vendors * * * because of the significant rights that he retains under his contract. These rights usually include the right to enter and make repairs and to charge the cost to the buyer[,] * * * the right to insure if the buyer fails to do so and, in the event of a default on the part of the buyer, has a simple remedy by which he may regain possession. We are not persuaded by this argument. Substantially similar arguments can be advanced with respect to mortgagees, who have the same or substantially similar rights. That the device of the installment contract as a means of financing the purchase of real estate is subject to abuse, and indeed has been abused, does not mean that it is not a useful credit device or that this court should impose upon a contract seller the liability of an owner of real estate.

*Anderson*, 301 N.E.2d at 298–99; see also *Welz v. Wong*, 413 Pa.Super. 299, 605 A.2d 368, 370–71 (1992) (holding that liability of a seller under installment contract is the same as a conventional vendor and quoting *Anderson*). As to Dubrays' claim that the

Howshars retained control over Sugar Hill because of the terms of the installment contract, we find the reasoning of the Illinois Supreme Court to be persuasive. The very limited rights retained by the Howshars under this contract with Carabajal affords them no control over the day to day management of Sugar Hill and should not be a basis for imposing liability.

In addition, the simple fact that Mr. Howshar's name appears on the liquor license does not give him sufficient control over Sugar Hill to support a higher standard of liability. Since the Howshars assigned the liquor license to Carabajal, they obviously did not intend to use, nor have they used, the liquor license as a means to control Sugar Hill. It is also clear that the sales contract with Carabajal was a bona fide sale of property and that the Howshars have not been and are not involved in the day-to-day management and supervision of Sugar Hill.

Having determined that the Howshars have parted with possession, title and control over Sugar Hill, we hold that they are vendors who owed no duty to appellants based upon our pronouncements in *ABC Builders, Inc.* We are satisfied, based on the undisputed facts, that if anyone had reason to know or knew of the alleged dangerous condition—careless operation of a liquor establishment—it was Carabajal, the vendee. And there being no dangerous condition of the premises, the Howshars had no duty to disclose as required by § 353 of the Restatement.

### Statutory Claim

In addition to their claims of common law duties, the Dubrays assert that Edward Howshar, as the named licensee on the liquor license used at Sugar Hill when Mr. Dubray was shot, violated several provisions of Wyoming's Alcoholic Beverages Act (Title 12) and that those violations proximately caused Mr. Dubray's injuries. The alleged Title 12 violations are: (1) under W.S. 12–4–102(b), W.S. 12–4–201(a), W.S. 12–4–601 and W.S. 12–4–604 (1986), illegal transfer of a liquor license; and (2) under W.S. 12–8–102 (1986), selling liquor without a proper license.

The undisputed evidence demonstrates that Edward Howshar, at the time of Dubray's injury, was not selling liquor without a license and, therefore, was not violating any duty which may have been imposed under W.S. 12–8–102 (1986). The evidence does reflect, however, that Edward Howshar may have been in violation of the statutes governing the transfer of liquor licenses because he may not have obtained prior approval from the licensing authority before assigning the license to Carabajal, as required under W.S. 12–4–601.

In *Distad v. Cubin,* 633 P.2d 167 (Wyo.1981), this court adopted §§ 286 through 288C of the Restatement, Second, Torts, as guidelines for addressing negligence claims premised on duties created by statutes, regulations or ordinances. *Id.,* at 175; see also *Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195, 1198–99 (Wyo.1987) and *Dubus v. Dresser Industries,* 649 P.2d 198, 202 (Wyo.1982). Section 286 provides:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

In other words, a statute, regulation or ordinance may be adopted as the standard of care only if "the injured party belongs to the class of persons that the statute was intended to protect, and the injury is of the type that the statute was intended to prevent." *Sagebrush Ltd. v. Carson City,* 99 Nev. 204, 660 P.2d 1013, 1015 (1983).

Based on these "directions," we must determine whether the four criteria of § 286 are met "because, if * * * not, then the statute imposes no duty of care for the breach of which he will be heard to success-

fully complain." *Dubus,* 649 P.2d at 202, and see *Short,* 731 P.2d at 1198–99. "[E]ven if the court finds that the [four] criteria of § 286 are met, [the court] is not required to adopt [W.S. 12–4–601] as the standard of conduct because of the permissive language of the Restatement 2d." *Short,* 731 P.2d at 1199 (citing *Distad,* 633 P.2d 167).

Under W.S. 12–4–604 it is illegal to transfer a liquor license except as directed in W.S. 12–4–601, which provides in part:

> (b) A licensee, or the executor or administrator of the estate of a deceased licensee, may assign and transfer the license or permit by a sale made in good faith. The assignment and transfer shall first have the approval of the licensing authority, which consideration shall be based in part upon a public hearing and an application filed under oath by the assignee or transferee showing the person or entity to be qualified to hold a license or permit under Wyoming law. The approval of the transfer shall not be given by the licensing authority if proceedings are pending to suspend, revoke or otherwise penalize the original license or permit holder. A transfer of a license or permit shall not require the payment of any additional license fee for the transfer and upon assignment the assignee may exercise the privilege of continuing the business authorized by the license or permit.

The district court concluded that this statute is purely administrative and, therefore, it does not create a duty from the Howshars, as licensees, to the Dubrays. In *McClellan v. Tottenhoff,* this court held that several statutes in Title 12, which forbid the sale of liquor to minors, impose a duty on vendors toward the general public. *McClellan,* 666 P.2d 408, 413 (Wyo.1983). Unlike the statutes in *McClellan,* W.S. 12–4–601 and –604 are not intended to protect the general public from physical injury. The requirement that liquor licenses only be transferred according to W.S. 12–4–601 serves to assure that the regulatory authorities can administer the licensing process in an orderly fashion and that "the operator of [a] retail liquor establishment * * * be exposed to the scrutiny of the licensing process including a public hear-

ing." *Kurpjuweit v. Northwestern Dev. Co., Inc.,* 708 P.2d 39, 46 (Wyo.1985). Since the purpose of W.S. 12–4–601 and –604 is not to protect against the kind of harm suffered by the Dubrays—physical injury—,we decline to adopt those statutes as the Howshars' standard of care.

### Nuisance Claim

█ In their complaint, the Dubrays also asserted claims based on Wyoming's nuisance statutes, W.S. 6–6–201 and 6–6–209, which make it illegal to own, control or lease property "for * * * sale or disposition of intoxicating liquor * * * in violation of law." They allege that the Howshars' violation of the liquor licensing statutes amounts to a nuisance and that it proximately caused Dubray's injuries.

If any nuisance existed, it was not created by the Howshars.

> [T]he test of liability for damage caused by a nuisance turns on whether the defendants were in control over the instrumentality alleged to constitute the nuisance, either through ownership or otherwise * * * [and] no one is to be held liable for a nuisance which he cannot himself physically abate without legal action against another for that purpose, unless the nuisance is the result of his own wrongful conduct.

58 Am.Jur.2d *Nuisances* §§ 117–118 (1989). Although Edward Howshar's name remained on the liquor license, the undisputed facts demonstrate that the Howshars neither owned, controlled, maintained nor leased Sugar Hill at the time that Gordon Dubray was injured. In addition, since the Howshars had sold Sugar Hill under a contract, they were bound by the terms of that contract and would have had to resort to legal proceedings to assert any significant control over Sugar Hill. Therefore, we hold that no action in nuisance lies against the Howshars because they had no control over the alleged nuisance.

### IV. CONCLUSION

The district court properly entered summary judgment in favor of the Howshars because the undisputed material facts show that they owed no common law or statutory

duty to the Dubrays and, since they had little or no control over Sugar Hill, were not liable for nuisance, if any there was, created at Sugar Hill.

We affirm.

THOMAS, J., files a dissenting opinion.

THOMAS, Justice, dissenting.

The product of the majority opinion is that accountability with respect to compliance with the laws relating to the sale of intoxicating beverages and the transfer of liquor licenses is excused. I do not think that result is appropriate, and I dissent.

The major premise of the majority opinion is that no duty is owed to third persons by a vendor of real property under a contract for deed and, since the Howshars were vendors of real property under a contract for deed, they owed no duty to the Dubrays. The majority opinion eschews any reference to *Scranton v. Whitlock,* 389 P.2d 1015 (Wyo. 1964). Yet the thrust of *Scranton* is that, because of the violation of WYO.STAT. § 12–4–601(b) (1986), the very contract upon which the Howshars rely for protection from liability is "illegal, void, and unenforceable." *Scranton,* 389 P.2d at 1018. As it might apply to the facts of this case, in which the liquor license was held by someone other than the owner of the building in which it was used, *Scranton* was reaffirmed in *Kurpjuweit v. Northwestern Dev. Co., Inc.,* 708 P.2d 39 (Wyo.1985).

My primary concern, however, is with the application of the statutory provisions relating to local licenses for the sale of alcoholic and malt beverages and the transfers of such licenses. In this regard, it is clear the county liquor license for the Sugar Hill Restaurant and Lounge was issued to Edward G. Howshar. It never was transferred to Alice Carabajal in connection with the sale of the business. WYO.STAT. § 12–4–103 (1986) provides in pertinent part:

(a) A license or permit authorized by this title **shall not be held by,** issued or transferred to:

    *     *     *     *     *     *

    (iii) **Any person who does not own the building in which the sales room is located** or hold a written lease for the period for which the license will be effective containing an agreement by the lessor that alcoholic or malt beverages may be sold upon the leased premises, except as provided by paragraph (iv) of this subsection * * *. (Emphasis added.)

WYO.STAT. § 12–8–101 (1986) makes violation of any provision of the title a misdemeanor. In this instance, either the Howshars were in violation of the law because they held a license without owning the building in which the sales room was located; they were aiding and abetting a violation of the law by Carabajal for selling liquor without a license; or Carabajal was the Howshars' agent in the operation of the Sugar Hill Restaurant and Lounge. I would rather assume that any unlawful activity was not intended or undertaken, and Carabajal was the Howshars' agent. Since the complaint encompasses an adequate allegation of agency, the liability of the Howshars should be submitted to trial like any liability of Carabajal.

My understanding of our prior decisions in this area is that we have adopted a policy that demands accountability by the vendor of alcoholic beverages. *White v. HA, Inc.,* 782 P.2d 1125 (Wyo.1989); *Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106 (Wyo.1987); *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo. 1983); *Fisher v. Robbins,* 78 Wyo. 50, 319 P.2d 116 (Wyo.1957). In *Tottenhoff,* 666 P.2d at 412, we described "a duty to exercise the degree of care required of a reasonable person in light of all the circumstances." In the seminal case of *Fisher,* 319 P.2d at 126, we said:

We do not intend that anything which we have said should be considered as placing us in disagreement with the many well-considered statements from reputable authorities as to the high degree of care which must be exercised by those maintaining places for public patronage, and especially for that class of establishments where experience has shown disturbances of more or less violent character are more likely to occur. This is, of course, particularly true with respect to barrooms and

other similar places where intoxicating liquors are consumed, for it is common knowledge that the use of intoxicants frequently unduly excites the tempers, emotions and actions of those who indulge in them.

Apparently, the trial court applied this rule with respect to Carabajal. If the issue of liability is to be tried as to Carabajal, it follows that the vicarious liability of the Howshars must also be tried.

Applying the accountability of a vendor to the holder of the liquor license constitutes an appropriate extension of our policy, particularly in an instance such as this in which the only lawful utilization of the license would constitute the vendor the agent of the holder of the license. I cannot agree the case is appropriately resolved under rules relating to the ownership of real property, and I dissent from the decision of the majority.

I would reverse the case and remand it to the district court for trial on the question of the vicarious liability of the holder of the liquor license.