Eleanor F. WILSON, Richard F. Wilson, P.D. Chadderdon, Clinton E. Nelson, Virginia E. Nelson, Kathryn A. Kennedy, William Michael Kennedy, Mark R. Francis, C. Laverne Gangwish, and Toni A. Dodge, Plaintiffs,

v.

AMOCO CORPORATION, an Indiana corporation, Amoco Oil Company, a Maryland corporation, Burlington Northern Railroad Company, a Delaware corporation, and Steiner Corporation, a Nevada corporation, Defendants.

No. 96–CV–0124–B.

United States District Court,
D. Wyoming.

May 1, 1998.

---

See also, 989 F.Supp. 1159.

Robert T. McAllister, Denver, CO, J.N. Murdock, Casper, WY, for Plaintiffs.

Frank D. Neville, Casper, WY, Raymond W. Martin, Cheyenne, WY, Peter Billings, Salt Lake City, UT, Gary E. Parish, R. Daniel Scheid, Denver, CO, Thomas F. Ryan, Chicago, IL, for Defendants.

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

BRIMMER, District Judge.

### Background

Currently before the Court are the dispositive motions of Defendants Burlington Northern and Steiner Corporation. The facts of this case are set forth at length in the Court's previous order on Plaintiffs' Motion for Preliminary Injunction. *See Wilson v. Amoco Corp.*, 989 F.Supp. 1159 (D.Wyo. 1998). The Court therefore will not recount the facts in any detail here. Suffice it to say that Plaintiffs allege Defendants Burlington Northern and Steiner have discharged and released hazardous and toxic contaminants from their respective Casper, Wyoming facilities, and in doing so have injured the public health and the environment as well as Plaintiffs' properties. Plaintiffs bring claims under the citizen suit provisions of the Resource Conservation and Recovery Act (RCRA) and the Clean Water Act (CWA), and common law claims of trespass, nuisance, negligence, and indirect condemnation.

### Standard of Review

**1. Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit; an issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing summary judgment. *See Walker v. Toolpushers Supply Co.*, 955 F.Supp. 1377 (D.Wyo.1997). In determining whether to grant summary judgment, the Court must examine the factual record in the light most favorable to the nonmoving party. *See Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995).

### Analysis

**1. Federal Law Claims**

**(a) Resource Conservation and Recovery Act**

The Resource Conservation and Recovery Act, or RCRA, regulates the generation, handling, treatment, storage, transportation, and disposal of solid and hazardous wastes. *See* 42 U.S.C. §§ 6922 – 25. In an effort to secure enforcement of the Act's provisions, Congress conferred enforcement power not only on the EPA or a duly authorized state agency, but also in certain circumstances on affected United States citizens themselves. RCRA's citizen suit provision provides in relevant part as follows:

> [A]ny person may commence a civil action on his own behalf—
>
> (B) against any person, including the United States and any other governmental instrumentality or agency, ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). Thus, any affected citizen may bring suit against any of the above individuals or entities whose waste-related acts or omissions present an imminent and substantial endangerment to health or the environment.

As the plain language of § 6972(a) specifies, it is not necessary that Plaintiffs show the contamination is damaging, or will damage, health or the environment. It is enough to show that such an endangerment "may" exist. In other words, Plaintiffs need not show actual harm to health or the environment, only threatened harm. *See Dague v. City of Burlington*, 935 F.2d 1343, 1355 (2d Cir.1991), *rev'd on other grounds*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982). This expansive language is indicative of Congress's intent "to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes." *See Dague*, 935 F.2d at 1355. Consequently, if the Court finds an imminent and substantial

endangerment exists, it has broad equitable powers, and may, "without regard to the amount in controversy or the citizenship of the parties, ... restrain any person who has contributed to the past or present handling, storage, treatment, transportation, or disposal of the solid or hazardous waste" presenting the threat to health or the environment. *See* 42 U.S.C. § 6972(a).

### ■ Burlington Northern

■ Burlington Northern contends Plaintiffs' RCRA claim is ripe not for summary judgment, but for final judgment, as there has been no new evidence offered by Plaintiffs in support of this claim since the Court's preliminary injunction order finding no imminent and substantial endangerment resulting from BN's contamination. Although this Court did rule at the preliminary injunction stage that the diesel fuel—the only substance shown "with any certainty to be attributable to BN"—did not constitute an imminent and substantial endangerment, *see Wilson*, 989 F.Supp. at 1180, that ruling was based as much on the heightened evidentiary showing required to secure preliminary injunctive relief as the evidence offered by BN in response to Plaintiffs' charges.

Moreover, there is some evidence, albeit limited, that BN is responsible for more than just diesel fuel contamination. Plaintiffs direct the Court's attention specifically to reports by Hart Crowser suggesting railroad maintenance operations at the BN yard are responsible for the release of chlorinated organics into the groundwater. *See* Pls.Ex. 3 at 2, 5, & 24; Ex. 16 at 3, 12, & 22. The Court admits, as it has throughout these proceedings, that the evidence against BN is unlikely to support a finding of imminent endangerment. That ultimate conclusion, however, is best made by the Court at trial after a full and fair presentation of the evidence has been made.

### (ii) Steiner

■ Like BN, Steiner asks the Court to dismiss the RCRA claim against it on the basis of this Court's preliminary injunction order finding that the PCE-infected groundwater poses no imminent and substantial endangerment to the health of Casper citizens or the Casper environment. As does BN, however, Steiner overlooks that the Court's ruling on preliminary injunction was based in part on the unique burdens imposed on Plaintiffs at that proceeding. *See Wilson*, 989 F.Supp. at 1180. Indeed, although the Court refused to enjoin Steiner at that time, it specifically directed the parties' attention to (1) the presence of certain affidavits "evidenc[ing] strongly Steiner's haphazard and consciously inappropriate handling of PCE-infected substances;" and (2) the fact that the ruling was not meant to signify that "Steiner is not a potential or even significant source of the PCE contamination." *Id.*

The Court is aware that the mere presence of PCE-infected groundwater is alone not enough to constitute an imminent and substantial endangerment. Plaintiffs submit, however, that tenants in a North Casper mobile home park are drinking groundwater containing PCE; that certain Casper properties are using groundwater for domestic purposes; that other properties' water supplies could be impacted in the event of a backflow; and that Casper citizens could be exposed to health risks by inhaling PCE fumes or using PCE-contaminated water. While Steiner contends this evidence is so lacking in force to warrant studied consideration, the Court believes it premature in these circumstances to determine the probative value of evidence and the credibility of witnesses without the benefit of live testimony and conduction of a trial on the merits. The Court therefore will not dismiss Plaintiffs' RCRA claim against Steiner.

### (b) Clean Water Act

The Clean Water Act was intended to "maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act therefore categorically prohibits any person from discharging pollutants from a point source into the navigable waters of the United States without a permit. *See* 33 U.S.C. § 1311(a); *see also Committee to Save Mokelumne River v. East Bay Mun. Utility Dist.*, 13 F.3d 305, 309 (9th Cir.1993).

As with RCRA, Congress saw fit to permit affected citizens to bring suit to enforce certain provisions of the CWA. The CWA's citizen suit provision provides in relevant part as follows:

> [A]ny citizen may commence a civil action on his own behalf—
>
> (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation. . . .

33 U.S.C. § 1365(a). If the Court finds a person in violation of the CWA, it may order any relief it considers necessary to secure prompt compliance with the Act.

In recent years, and in this case, there has been much debate about when a person is "in violation" of the CWA. The controversy originated in 1987 when the Supreme Court in *Gwaltney of Smithfield, Ltd., v. Chesapeake Bay Found.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306, held the CWA's citizen suit provision did not permit private actions based on "wholly past [CWA] violations." The Court reasoned that the most natural reading of the phrase "to be in violation" requires "citizen-plaintiffs [to] allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57, 108 S.Ct. 376.

Although *Gwaltney* settled that "wholly past" violations are not cognizable under the CWA's citizen suit provision, it offered little explanation as to when a violation ceases to be ongoing and becomes "wholly past." Authorities are split on the issue. Some courts have adopted an expansive interpretation and held that an ongoing violation exists until the risk of continued violation has been completely eradicated. *See, e.g., Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir.1988). Two courts have employed this language in concluding that a violation is ongoing when a pollutant previously added to groundwater continues to reach a navigable water via groundwater migration. *See Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods*, 962 F.Supp. 1312, 1322 (D.Or.1997); *Werlein v. United States*, 746 F.Supp. 887,

896–97 (D.Minn.1990), *vacated in part on other grounds*, 793 F.Supp. 898 (1992).

Other courts have not been so generous, and have held both pre- and post-*Gwaltney* that "continuing residual effects resulting from a discharge are not equivalent to a continuing discharge." *Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392, 397 (5th Cir.1985); *see Connecticut Coastal Fishermen's Ass'n v. Remington Arms*, 989 F.2d 1305, 1313 (2d Cir.1993) ("The present violation requirement of the [CWA] would be completely undermined if a violation included the mere decomposition of pollutants."); *Brewer v. Ravan*, 680 F.Supp. 1176, 1183 (M.D.Tenn.1988). In addition, a district court in this Circuit has only recently held that "migration of residual contamination resulting from previous releases is not an ongoing discharge within the meaning of the [CWA]." *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F.Supp. 1333, 1354 (D.N.M.1995).

After considerable study, the Court finds Plaintiffs' CWA claims must be dismissed. For one thing, operations sufficient to result in the release of contaminants concluded years ago at each of the Defendants' facilities. Numerous courts have held that only in rare circumstances will an ongoing CWA violation exist when the facilities from which the contaminants are emanating have themselves ceased operating. *See, e.g., Connecticut Coastal Fishermen's Ass'n*, 989 F.2d at 1312–13; *Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp.*, 807 F.2d 1089, 1094 (1st Cir.1986) (noting there was no reasonable likelihood of recurring violation where facility had shut down); *Brewer*, 680 F.Supp. at 1183. Moreover, this Court agrees with the rationale expressed in *LAC Minerals* and other cases that migration of residual contamination from previous releases does not constitute an ongoing discharge, and that to so hold would undermine the CWA's limitations as set forth in the statute's definition of point source and the Supreme Court's holding in *Gwaltney*. Therefore, because Defendants present are not adding—and were not adding at the time Plaintiffs filed their complaint—any pollutants from a point source into navigable waters or tributary

groundwater, and because there is no threat of a continuing or future CWA violation, the Court will enter summary judgment in favor of Defendants on Plaintiffs' CWA claims. *Cf. Sierra Club v. Colorado Refining Co.*, 838 F.Supp. 1428, 1434 (D.Colo.1993) (CWA violation occurs if a refinery *continues* to discharge pollutants into soils and tributary groundwater which then makes its·way into water body).

## 2. State Law Claims

### (a) Statute of Limitations

■ BN and Steiner contend that the applicable statute of limitations has expired with respect to the state law claims of various Plaintiffs. Specifically, BN seeks dismissal of Gangwish's claims, while Steiner asks the Court to dismiss the state law claims of Dodge, Gangwish, Nelson, and the Kennedys.

■ All parties are in agreement that with respect to the remaining state law claims of trespass, nuisance, and negligence, the applicable statute of limitations requires such claims to be brought within four years of the cause of action's accrual. *See* W.S. § 1–3–105(a)(iv). A cause of action accrues when the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act. *See Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 337 (Wyo.1986).

In this instance, the record before the Court reveals no facts sufficient to put a reasonable person in the position of any of the North Casper Plaintiffs on notice of a cause of action. Of these Plaintiffs, only Gangwish possibly could have had pre–June 10, 1992 knowledge of the contamination of his property. And his knowledge is so limited with respect to the presence of the contamination, the damage caused by the contamination, and the source of the contamination, that it cannot support a finding that Gangwish reasonably should have known of any injury or should have known that any injury resulted from the wrongful conduct of Steiner or BN. *Cf. Metzger v. Kalke*, 709 P.2d 414, 419 (Wyo.1985) (finding that in medical malpractice case, "a plaintiff discovers an 'alleged act, error, or

omission' ... when he learns that his harm resulted from the wrongful conduct of the defendants").

Notwithstanding the expansive language of *Metzger*, Steiner argues that because its alleged PCE discharges occurred between 1972 and 1987, the North Casper Plaintiffs' properties were affected "over 20 years ago," well outside the four year limitations period. This argument ignores that the statute of limitations is not triggered merely because Steiner previously released the same contaminant into the environment, or because Steiner closed its facility. The statute is triggered when a particular Plaintiff reasonably should have discovered any injury or damage arising from the contamination. Because there is no evidence before the Court sufficient to support the conclusion that these "North Casper" Plaintiffs reasonably should have known of any injury before June 10, 1992, the Court will not dismiss their state law claims or limit their damages time-frame for those claims.

### (b) Trespass

■ A trespass is an injury to another's possession of land which occurs when there has been an invasion of the interest in the exclusive possession of the land and in its physical condition. *See Edgcomb v. Lower Valley Power & Light*, 922 P.2d 850, 859 (Wyo.1996). Thus, to recover for trespass a plaintiff must establish that the plaintiff's property has been physically impacted by someone or something. A trespass is committed beneath the surface of the earth when there occurs any unprivileged entry on land beneath the surface. *See* Restatement (Second) of Torts, § 159.

### (i) BN

■ BN contends there is no evidence that any contamination from its yard has impacted the North Casper Plaintiffs' properties. This contention not only assumes that BN is responsible merely for diesel contamination, an assumption that for purposes of this motion the Court addressed and rejected above, but also ignores the array of evidence indicating the off-site migration of contamination from the BN property. For

example, Plaintiffs' expert Doty concludes in his affidavit that the former above ground fuel tank and the fueling track at the BN yard are sources of groundwater contamination. *See* Affidavit of Benjamin P. Doty, at ¶¶ 10 & 17. Likewise, reports by Hart Crowser and ERM explain that contamination from the BN yard either has migrated or has the potential to migrate off-site in the direction of the North Casper Plaintiffs' properties. *See* Pls.Exs. 2, 3, and 5. Finally, Plaintiffs' expert Walter Merschat's investigation allegedly reveals that migration of contamination from the BN yard has impacted the North Casper area. *See* Pls.Ex. 1. This evidence is sufficient to create a triable issue on the North Casper Plaintiffs' trespass claim against BN.

### (ii) Steiner

For its part, Steiner contends summary judgment is appropriate not because there is no evidence of impact, but because there is no evidence of "actual damages" to the North Casper Plaintiffs' properties. In Wyoming, however, once a plaintiff establishes that a trespass occurred, that plaintiff is entitled to at least nominal damages for the wrongful intrusion. *See Harmony Ditch Co. v. Sweeney,* 31 Wyo. 1, 222 P. 577 (Wyo.1924); *see also* Restatement (Second) of Torts, § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land . . ."). As such, Steiner is not entitled to summary judgment on this claim.[1]

### (c) Nuisance

BN and Steiner each seek dismissal of Plaintiffs' nuisance claims on grounds that (1) there must be, and is not here, a physical, visual, or other sensory impact on each particular Plaintiff's property, and (2) there is no evidence of injury sufficient to constitute a nuisance. The Court will consider these arguments in turn.

A nuisance is a wrong that "arises from an unreasonable, unwarranted, or unlawful use by a person of his own property," and which works an obstruction or injury to the right of another. *Bowers Welding & Hotshot, Inc. v. Bromley,* 699 P.2d 299, 306 (Wyo.1985). "Liability for nuisance may be imposed on any of three bases: (1) intentional invasion of a plaintiff's interests; (2) negligent invasion of a plaintiff's interests; or (3) conduct which is abnormal and out-of place in its surroundings and so falls fairly within the principle of strict liability." *Timmons v. Reed,* 569 P.2d 112, 123 (Wyo.1977). Nuisance is often succinctly described as an interference with the use and enjoyment of the plaintiff's land. *See generally* 58 Am. Jur.2d, at § 43.

An unwarranted interference with a plaintiff's property may occur absent a physical invasion of the property. *See In re Tutu Wells Contamination Litigation,* 909 F.Supp. 991, 996 (D.Vi.1995) (citing cases); *see also* Restatement (Second) of Torts, § 821D ("A private nuisance is a *nontrespassory* invasion of another's interest in the private use and enjoyment of land."); 58 Am.Jur.2d, at § 89 ("[A]lthough a nuisance may involve a physical impact much of the time, that is not an essential element of the tort."). If there is no physical impact, however, there obviously must be some sensory impact or other interference with the use and enjoyment of the plaintiff's property. While the various types of conduct that could foreseeably be said to interfere with use and enjoyment and thus raise a nuisance are numerous, the cause of action has its limits. The most notable limitation in Wyoming, and the one Defendants point to here, is that the interference complained of cannot be merely an alleged diminution in value of property. *See Edgcomb,* 922 P.2d at 860 ("[D]iminution in value of the property alone is not, as a matter of law, interference with the use of property."). Thus, to the extent a Plaintiff's only claimed interference is diminution in

---

1. Both BN and Steiner also submit that, because the groundwater underneath the Plaintiffs' properties is not owned by Plaintiffs but by the State of Wyoming, no damage to a property right of Plaintiffs has occurred. While true that the groundwater itself is not owned by Plaintiffs, this argument ignores that the groundwater migrates through the soil underlying Plaintiffs' properties, leaving in its wake contaminants in those soils. This is indisputably an injury to Plaintiffs.

property value, that Plaintiff's nuisance claim must fail.[2]

 While the North Casper Plaintiffs in the instant matter do refer to a diminution in value of their properties, their nuisance claims against BN and Steiner do not rest on that basis alone. Indeed, the North Casper Plaintiffs attest to other interferences that independently warrant denial of summary judgment on this claim. For example, indoor air tests of Plaintiffs Kennedy's and Dodge's homes indicated the presence of PCE. *See* Affidavit of William Michael Kennedy, at ¶ 1 (Pls.Ex.24); Affidavit of Toni A. Dodge, at ¶ 1 (Pls.Ex.25). Kennedy also attests that since approximately 1995 he has refused because of the alleged presence of PCE-contaminated groundwater to use the well on his property to water his lawn or garden. *See* Affidavit of William Michael Kennedy, at ¶¶ 2 & 3 (Pls.Ex.24). Dodge, who does not have a well on her property, cannot dig one because of the contamination. *See* Affidavit of Toni A. Dodge, at ¶ 3. In addition, the crawl space of Dodge's home emits a constant odor, purportedly because of the contamination of her property. *See id.* at ¶ 2. Plaintiff Nelson attests in her affidavit that because of the contamination of her property she has been denied a bank loan, and has effectively been denied the use of the well on her property. *See* Affidavit of Virginia E. Nelson, at ¶¶ 1 & 3. Nelson also attributes the poor health of the trees and gardens on her property to the contamination. *See id.* at ¶ 3. Finally, the well on Plaintiff Gangwish's property has consistently tested positive for PCE. *See* Affidavit of C. Laverne Gangwish, at ¶ 1. The presence of this contamination has prevented Gangwish from using the well for domestic purposes, and allegedly is or has been responsible for the death of trees on the Gangwish property and the ill-health of dogs that have ingested water from the Gangwish well. *See id.* at ¶¶ 3 & 5. In sum, the types of interferences described by the North Casper Plaintiffs affect and limit the uses of these Plaintiffs' properties, and may therefore serve as the basis of a nuisance claim.

BN and Steiner further contend that even if accurate these interferences do not "rise to the level of significant interference with enjoyment of property contemplated for a nuisance." The Court disagrees. The interferences described above are more than slight inconveniences or petty annoyances; they are real and appreciable interferences with the North Casper Plaintiffs' properties which significantly narrow the uses to which the properties can be put and the manner in or extent to which the properties can be enjoyed. *See* Restatement (Second) of Torts, § 821F, Comment c. Furthermore, questions related to the significance of interference with a property are fact-intensive and best resolved by a jury after presentation of the facts and appraisal of the circumstances. *See Timmons,* 569 P.2d at 124.

### (d) Negligence

 To sustain a negligence claim, a plaintiff must establish that: (1) defendant owed a duty to plaintiff to conform to a specified standard of care; (2) defendant breached that duty; (3) defendant's breach proximately caused injury to plaintiff; and (4) plaintiff's injuries are compensable by money damages. *See Keehn v. Town of Torrington,* 834 P.2d 112, 115 (Wyo.1992). BN and Steiner challenge on various grounds Plaintiffs' ability to establish these elements. Although Defendants' arguments are phrased differently, these Defendants essentially contend that Plaintiffs cannot establish either a breach of any duty owed to them by Defendants or proximate causation. The Court will consider these contentions collectively.

 A duty to act in accordance with a specified standard of care exists when, given the facts, there is a relationship between the parties such that "the community will impose a legal obligation upon one for the benefit of the other—or, more simply, [where] the interest of the plaintiff which has suffered invasion [is] entitled to legal protec-

---

2. Once a Plaintiff establishes a nuisance, however, that Plaintiff may recover damages for, among other things, the diminution in value of the Plaintiff's property caused by the nuisance.

The Wyoming Supreme Court in *Edgcomb* merely stated that a Plaintiff may not establish a nuisance solely on the basis of diminution in value of property.

tion at the hands of the defendant." *Goodrich v. Seamands*, 870 P.2d 1061, 1064 (Wyo. 1994). There is little doubt—and Defendants do not dispute with any force—that Defendants had a duty to conduct their operations so as not to release contaminants from their facilities that would migrate and impact or otherwise damage Plaintiffs' properties.

The substance of Defendants' objections to Plaintiffs' negligence claims relates to Plaintiffs' supposed inability to establish breach of duty and proximate causation. As discussed above, however, there is at least some evidence that both BN and Steiner released contaminants into the Casper environment and that those contaminants have migrated off-site and impacted Plaintiffs' properties. Nothing more is required to establish these two prima facie elements. Although Steiner argues that proximate cause cannot as a matter of law be established because any injuries suffered by Plaintiffs were not foreseeable, the Court agrees with and considers applicable the following statement of the Ninth Circuit Court of Appeals in *Union Oil Co. v. Oppen:*

> The dangers of pollution were and are known even by school children. The defendants understood the risks of their business and should reasonably have foreseen the scope of its responsibilities. To assert that the defendants were unable to foresee that negligent conduct resulting in a substantial oil spill could diminish aquatic life and thus injure the plaintiffs is to suppose a degree of general ignorance of the effects of oil pollution not in accord with good sense.

*501 F.2d 558, 569 (1974).*

■■■■■ Moreover, it is apparent that Steiner and BN reasonably could have and should have anticipated some injury from the manner in which they released and disposed of the contaminants at issue here. It is not necessary, as Steiner apparently argues, that the precise injury be foreseen. *See Daily v. Bone*, 906 P.2d 1039, 1043 (Wyo.1995); *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo.1983). Similarly, it is not dispositive for proximate causation purposes that there may be in addition to Steiner over 17 potential sources of the downtown PCE plume. It

is well-settled that there may be more than one proximate cause of a particular injury. *See Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1186 (Wyo.1994). Thus, the question of proximate cause is best left for the jury in circumstances such as these, where reasonable minds could differ as to the contributions of each Defendant to the downtown plume and the impact on a specific Plaintiff's property of contamination attributable to a specific Defendant. *See Daily*, 906 P.2d at 1043; *Hull*, 886 P.2d at 1186 (proximate cause is question of fact for jury).

### (e) Indirect Condemnation

■■■■■ Wyoming statute § 1–26–516 provides that a property owner may seek damages from a party who takes possession of or substantially diminishes the value of the property owner's land, provided that party has the power of condemnation and exercises that power without the property owner's authorization or without initiation of a condemnation action. Plaintiffs invoke this statute here, claiming that contamination from BN impacted Plaintiffs' properties, substantially diminishing their value and effectively taking their property. Even were the Court to assume W.S. § 1–26–810 permitted BN to take property for the purposes of waste disposal, it would nonetheless be compelled to dismiss this claim. In *Chavez v. City of Laramie*, the Wyoming Supreme Court delineated the limits of condemnation claims in this state:

> It certainly will not be contended that every destruction of property or injury thereto by public officers or their agents, in the discharge of government functions, is covered by the constitutional guaranty relied on in this case. Where the injury involves a tort, being caused by the negligence of public officers or their agents, it cannot be said that property is taken or damaged for public use.

> We think the [following] rule ... is correct. It states:

> If the damage for which recovery is sought is the result of improper, unlawful or negligent construction ... recovery may not be had therefore in the [condemnation] proceeding; the owner is

relegated in such case to a common-law action for damages.

389 P.2d 23, 24–25 (Wyo.1964).

While the facts of *Chavez* do not coincide entirely with the facts in this case, the Wyoming Supreme Court has described the principle embodied in that case as follows: "recovery of damages for negligence may not be had in a condemnation action. The property owner is relegated to a common-law action for damages." *Coronado Oil Co. v. Grieves*, 642 P.2d 423 (Wyo.1982); *see also State Highway Comm'n v. Laird*, 426 P.2d 439, 441 (Wyo.1967) (noting that where claim for damages is based on tort, condemnation action is appropriately dismissed).

It is apparent from the face of the complaint that the claims for monetary damages against BN are based purely on tort theories of recovery. Plaintiffs contend that BN's unreasonable handling and disposal of contaminants allowed those contaminants to enter on, under and above the surface of Plaintiffs' properties, and constituted trespass, nuisance, and negligence. This type of conduct is, at least in the circumstances considered here, not within the scope of an inverse condemnation action. Plaintiffs consequently may not proceed on their claim for inverse condemnation, but instead may recover for any property damage only to the extent allowed by their common-law claims.

### (g) Stigmatization Damages

 It is apparent from the maps submitted by Plaintiffs' damages experts that some Plaintiffs whose properties arguably have not been physically impacted or physically injured may nonetheless be seeking damages for the diminution in value of their properties allegedly caused by the stigma associated with living on or owning property that is in close proximity to property that has in fact been physically impacted or affected by contamination. Virtually every court to consider this proposition, however, has rejected it. In *Berry v. Armstrong Rubber Co.*, the Fifth Circuit Court of Appeals, applying Mississippi law, responded to plaintiffs' claim for stigma damages by noting that plaintiffs had "cited no case, and the court has found none, holding that Mississippi common law allows recovery for a decrease in property value caused by a public perception without accompanying physical harm to the property." 989 F.2d 822, 829 (1993). The Fifth Circuit reaffirmed this rule only recently in *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 175–76 (1997) (allowing recovery for stigma damages where permanent and physical injury to plaintiff's property has occurred). The Third Circuit adopted a similar rule in the case of *In re Paoli R.R. Yard PCB Litig.*, holding there that stigma damages were recoverable only when a physical impact on the particular plaintiff's property had occurred. 35 F.3d 717, 798 (1994). Finally, both Michigan and California have rejected claims for stigma damages absent some proof of permanent physical injury. *See Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 721 (Mich.1992); *Santa Fe Partnership v. Arco Prods. Co.*, 46 Cal. App.4th 967, 983–84, 54 Cal.Rptr.2d 214 (Cal. App.1996). The Court agrees with the rational expressed in these and other cases that claims of stigma damages absent some other definable physical harm to the property are simply too speculative to warrant serious consideration. *See Adams v. Star Enter.*, 851 F.Supp. 770, 773 (E.D.Va.1994); *Chance v. BP Chems., Inc.*, 77 Ohio St.3d 17, 670 N.E.2d 985, 993 (Ohio 1996). Consequently, Plaintiffs in the instant matter may not recover damages based solely on stigma absent proof of some physical injury or harm to the specific Plaintiff's property (i.e., separate establishment of a claim for trespass, nuisance, or negligence).

### *Conclusion*

Based on the foregoing, the Court **ORDERS** that the Motions for Summary Judgment of Defendants Burlington Northern and Steiner are **GRANTED IN PART AND DENIED IN PART**. Specifically, Burlington Northern's Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' Clean Water Act and indirect condemnation claims, and **DENIED** with respect to Plaintiffs' Resource Conservation and Recovery Act, trespass, nuisance, and negligence claims. Steiner Corporation's Motion for Summary Judgment is **GRANTED** with re-

spect to Plaintiffs' Clean Water Act claim, and **DENIED** with respect to Plaintiffs' Resource Conservation and Recovery Act, trespass, nuisance, and negligence claims.