605 A.2d 368

**Cheryl Lynn WELZ and Joseph P. Welz, Appellants,**

v.

**Herbert C. WONG and Theresa Wong.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1991.

Filed March 19, 1992.

Paul E. Moses, Pittsburgh, for appellants.

Michael E. Koll, State College, for appellees.

Before OLSZEWSKI, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting appellees' preliminary objections in the nature of a demurrer. Appellants raise two issues for our consideration, (1) whether the liability of a landowner who sells land under articles of agreement and retains legal title should be determined under rules applying to a landlord out of possession or those applying to a vendor-vendee relationship; (2) whether the allegations in the complaint were sufficient to withstand a demurrer. We affirm.

The within dispute centers around the sustaining of personal injury by appellant Cheryl Welz when she fell down a flight of wooden stairs at the rear of Champs Sports Bar and Grill in State College, Pennsylvania, at approximately 2:30 A.M. on January 11, 1989. After the accident, appellants filed a personal injury action alleging that the stairway was in defective and unsafe condition. The complaint also alleged that, at the time of the accident, appellees were the legal owners of the bar but that the bar was the subject of articles of agreement of sale, appellees withholding title until all installments of the purchase price were paid. Appellees were named as defendants as were Collegiate Subs, Inc., and Scott Lucchesi, president of that corporation, as vendees under the articles of agreement.

With regard to appellees herein, the complaint alleged that at the time of sale to Collegiate Subs, appellees knew the premises would be used for admission of a large number of persons and knew or should have known that the defective condition of the stairway would pose an unreasonable risk to the patrons. Additionally, it was alleged that appellees had reason to know that Collegiate Subs would admit patrons without putting the stairway in safe condition yet appellees failed to remedy the defective railway prior to selling the property to Collegiate Subs. Appellees filed preliminary objections demurring to the evidence. They asserted that no cause of action was stated against them

because the complaint failed to allege that they participated in the operation of Champs, or contracted to make repairs, or concealed any dangerous condition or retained any control over the property. The trial court sustained the demurrer, applying the rules of liability of a vendor of real estate as opposed to that of a landlord out of possession, as argued by appellants. This appeal followed.

The primary disagreement between the parties on the appropriate standard is grounded upon the fact that although both a vendor and a landlord out of possession are not generally liable for injuries resulting from a condition of the premises there are exceptions to the general rule of non-liability. A comparison of those exceptions reveals that the exceptions relating to a vendor are more restrictive than those that apply to a landlord out of possession. The particular exception appellant urges us to hold applicable to the facts of the present case reads as follows: "if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee, ..." *Henze v. Texaco, Inc.*, 352 Pa.Super. 538, 508 A.2d 1200, 1202 (1986).

In contrast, as to a vendor, a vendor will be found liable as to a dangerous condition only if the vendee does not know of, or have reason to know of, the condition or the risk involved and if the vendor has reason to believe that the vendee will not discover the condition or realize the risk. See, Restatement of Torts (Second) § 353. Appellant has conceded that the complaint does not allege facts sufficient to state a cause of action against appellees under this exception. (Appellant's brief at p. 12.) Consequently, this case turns upon a determination of whether the exceptions relating to a landlord out of possession should apply, or those relating to a vendor should apply.

Neither appellant, nor appellee, have cited to a case discussing the exact inquiry before us, that is, whether a landowner who sells land through a land sale contract, articles of agreement or some other form of installment

contract and who retains title pending performance of the contract, should be treated differently, for liability purposes, from a vendor who sells the land and delivers a deed. Our own research has found one case where this topic was discussed.

In *Anderson v. Cosmopolitan National Bank of Chicago*, 54 Ill.2d 504, 301 N.E.2d 296 (1973), the Illinois Supreme Court considered a case where a young child was injured when he fell through a stairway railing that had slats missing. Jessie and Mabel Smith had entered into an installment contract for the purchase of the property from William and Mary Suchier, the title owners. The Suchiers retained title in the property pending payment of all the installments. Further, the sellers retained the right to make repairs to the property and purchase insurance on the property should the buyers fail to do the same.

If buyers failed to make any payment, sellers had the option to consider the contract forfeited, retake possession of the property and retain all installments previously paid. The Smiths took possession of the property on May 1, 1963. The appellant, mother of the injured child, had rented an apartment in the building on April 1, 1963 from the Suchiers. The injury occurred on May 7, 1963, only six days after the Smiths had taken possession. In an action against the Suchiers, the minor's guardian relied upon a theory that the defect in the railing existed at the time of the contract sale to the Smiths and that the Suchiers knew, or should have known of it and were negligent in failing to keep the property in repair. The Suchiers moved for summary judgment, which was granted. On appeal, the intermediate court reversed, which decision was then appealed by the Suchiers to the Illinois Supreme Court.

In reversing the decision of the appellate court, the Illinois Supreme Court made the following commentary rejecting the appellee's argument that the Suchiers' decision to sell the land through the scheme chosen somehow affected the responsibility to occupants of the building:

The plaintiff does not urge us to affirm the judgment of the appellate court for the reasons stated in the opinion of that court. Rather the argument is that those who sell real estate upon installment contracts should be subjected to a different and more strict liability than is imposed upon other vendors. Specifically, it is urged that "the 'contract seller' should be treated as an owner or lessor" because of the significant rights that he retains under his contract. These rights usually include the right to enter and make repairs and to charge the cost to the buyer. The seller has the right to insure if the buyer fails to do so and, in the event of a default on the part of the buyer, has a simple remedy by which he may regain possession. We are not persuaded by this argument. Substantially similar arguments can be advanced with respect to mort-gagees, who have the same or substantially similar rights. That the device of the installment contract as a means of financing the purchase of real estate is subject to abuse, and indeed has been abused, does not mean that it is not a useful credit device or that this court should impose upon a contract seller the liability of an owner of real estate.

In contrast to this position, appellants suggest the law in Pennsylvania is to the contrary. Appellants argue that the case of *Maglin v. Peoples City Bank,* 141 Pa.Super. 329, 14 A.2d 827 (1940), indicates that the rules that govern a negligence action against a landowner who sells land through a land sales agreement while retaining legal title are those which apply to a landlord out of possession.

In *Maglin,* Peoples City Bank purchased a bathhouse and swimming pool known as Rainbow Gardens at a sheriff's sale. Subsequently the bank leased the property to an individual named Bostrom for a period of less than one year. After expiration of the lease the bank and Bostrom entered into an agreement for the purchase of the property by Bostrom. Under the agreement the bank retained the deed to the property pending full payment by Bostrom. Bostrom later defaulted under the agreement. However,

prior to the default, Maglin suffered a personal injury on the premises. Maglin sued both Bostrom and Peoples City Bank on counts of negligence. In considering the responsibility of the respective defendants the court noted that there was no evidence of a principal-agent relationship between Bostrom and the bank. The court then concluded, without discussion of principles of a vendor-vendee relationship, that "[t]he relation between the bank and Bostrom, under the agreement of sale, pending the passing of title is more nearly analogous to that of lessor and lessee." *Id.*, 141 Pa.Superior Ct. at 336, 14 A.2d at 830. Appellants argue that this case requires application of the rules of liability for a landlord out of possession to appellees. Appellees argue otherwise, suggesting that the *Maglin* court did not consider rules applying to a vendor and that *Maglin* only holds that between a principal-agent approach and a landlord-tenant approach the landlord-tenant approach was more accurate to the facts of that case.

Ordinarily a prior decision of this court is considered binding upon a panel of this court as to decisions postdating the prior decision. However, this court is certainly empowered to interpret and construe prior decisions and apply them in good faith to later cases. If the decision in *Maglin* had contained a thorough review of competing theories and possibilities with respect to the proper scope of liability to impose upon an installment contract seller of real estate and chosen the rules pertaining to a landlord out of possession, we would be reluctant—despite its age and the fact that it has not been reaffirmed in a substantial number of cases subsequent to its publication—to distinguish such precedent away or otherwise seek to exclude its application. However, such is not the case here. The *Maglin* court did choose to apply rules relevant to a landlord out of possession to the facts of that case. But the reference to an alternative of a principal-agent possibility, along with a lack of discussion regarding other possibilities, does provide some suggestion that possibly these were the only two theories under consideration by the parties and/or the

court. Obviously, the plaintiff in *Maglin* would have preferred a finding of a principal-agent relationship which would certainly have exposed the bank to possible liability. In contrast, it cannot escape notice that although choosing a landlord out of possession theory, the court still found liability lacking under those rules.

It is possible that the bank argued a landlord out of possession standard perceiving that standard sufficiently restrictive to prevent liability under the facts presented there. Further, it should be noted that the Superior Court reversed the decision of the lower court in *Maglin*. A basic tenet of appellate law and practice indicates that although an appellate court is free to affirm a lower court on theories other than those advanced by the parties or considered by the trial court, the court is not free to reverse on theories not raised below. See, generally, *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974), and *Penn Clair Construction Co. v. Eden Roc Country Club*, 294 Pa.Super. 377, 440 A.2d 514 (1981). Thus, it is possible that there was no discussion of applying a vendor status to the bank because such theory was not propounded by the bank. Similarly, if we assume that the court was obeying this tenet of appellate law, we must assume that the bank was at least arguing that a landlord out of possession theory should apply. In any event, particularly in light of a lack of discussion of the possibility of treating a contract seller as a vendor for liability purposes, and also in light of language providing a more definitive holding, we do not read *Maglin* as mandating that a contract seller of real estate who retains legal title pending full payment of the contract price be subjected to the scope of liability imposed upon a landlord out of possession. Rather we believe it more appropriate to impose the scope of liability associated with a conventional vendor.

From a policy standpoint the reasoning behind imposing greater responsibility on the shoulders of landlords out of possession as opposed to vendors who sell their property is rather self evident. It would seem far less likely that an

individual or entity that is merely renting property from another would make improvements to the property or otherwise repair defects, particularly when doing so would often entail substantial expense. The transitory interest in the property is simply insufficient to prompt the average lessee to invest money in improving or repairing the property only to turn possession back over to the owner when the lease expires.

In contrast, it would seem far more likely that if improvements and expensive repairs were to be made they would be made by the owners of the property. For it is they who have the long term vested interest in the property. Even if the likelihood were not greater, it seems more equitable to charge that obligation to the landowner for the very same reason that the landowner retains the long term interest, right and benefits in the property and therefore, it seems, should bear the corresponding responsibility. In contrast, the owner of property who is selling that property and divesting himself of that property relinquishes the long term interest in the property and it would seem more equitable that responsibility for that land should also be transferred to the new owner. The question then is, when a landowner sells through an installment contract does he retain sufficient interest in the property that justifies imposition of the greater scope of liability. Like the Illinois court quoted above, we think not.

■ It is true that the seller of land by an installment contract who retains title pending full payment of the sales price has a greater interest in the property than an individual who passes title at the time of sale. However, that interest is entirely contingent and often remote. If the contract is complied with, the installment seller has no greater *de facto* rights in the property than a seller who delivered the deed at the time of sale. The retained rights will vest only if another party out of the seller's control fails to meet the terms of the contract. In this scenario, the seller is filling the shoes of both seller and mortgagee. After the contract is signed the rights retained are essen-

tially those possessed by a mortgagee. Notably, the scope of liability urged by appellant here is not recognized as to a mortgagee, either. In *Zisman v. City of Duquesne*, 143 Pa.Super. 263, 18 A.2d 95 (1941), we stated " 'actual control and possession' are necessary to make a mortgagee liable to third persons in tort for failure to properly maintain the mortgaged premises, ..." *Id.*, 143 Pa.Superior Ct. at 268, 18 A.2d at 97. See also, Premises Liability 62 Am.Jur.2d § 8, p. 356. Consequently, we believe the retained interest of the contract seller is too remote to justify the higher standard of liability that would accompany the treatment of such a seller as a landlord out of possession. Further, it is not as if there is no responsible party under this interpretation. The contract purchaser of the property would undoubtedly be charged with the same obligations generally charged to a vendee or owner of real estate. It is this vendee who along with acquiring the property acquires the responsibility to keep the property in good repair and safe for business invitees. The contract seller should be charged with no greater responsibility while out of possession than an ordinary vendor.

Appellants have admitted that their complaint does not state a cause of action against appellees if the appropriate standard to be charged is that of an ordinary vendor. Because we believe that standard to be the appropriate standard to charge to appellees the trial court was correct in granting appellees preliminary objections and dismissing the complaint against them. For the above reasons we affirm the order appealed from.

Order affirmed.