J-A26038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID H. KING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HINKLE, JEFFREY S. | : | |
| FIELDING AND STEPHANIE J. | : | |
| FIELDING | : | No. 259 WDA 2024 |
| | : | |
| | : | |
| APPEAL OF: JEFFREY S. FIELDING | : | |
| AND STEPHANIE J. FIELDING | : | |

Appeal from the Judgment Entered March 27, 2024
In the Court of Common Pleas of Erie County Civil Division at No(s):
12382-14

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:              **FILED: JANUARY 13, 2025**

Jeffrey S. Fielding and Stephanie J. Fielding ("Appellants") appeal from the judgment entered on March 27, 2024, in favor of David H. King ("King") and against Appellants, in this civil matter regarding a dispute over the title to a parcel of land situated in Erie County, Pennsylvania.[1]  After careful consideration, we vacate the judgment and remand for dismissal.

---

[1] Appellants purport to appeal from the order entered on February 27, 2024, denying their post-trial motion; however, an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions. ***See Fanning v. Davne***, 795 A.2d 388 (Pa. Super. 2002).  Although Appellants erroneously appealed from the order denying their post-trial motion, judgment was subsequently entered on March 27, 2024, and their notice of appeal relates forward to that date.  ***See*** Pa.R.A.P. 905(a)(5). Hence, no jurisdictional defects impede our review.

J-A26038-24

The trial court summarized the relevant facts and procedural background of this case as follows:

> This matter arises from a dispute over a land contract for the purchase of approximately 5[1] acres of rural property located in Union Township, Erie County, about three miles north of Union City. The contract in question was executed on June 1, 1998.[2] The parties to this action are … King,[1] purchaser under the land contract, … William Hinkle [("Hinkle")], seller under the land contract, and … [Appellants], subsequent purchasers of a portion of the property after Hinkle [purportedly] terminated the land contract.
>
> > [1] [] King was married at the time to Randee King[ ("Randee") (collectively "the Kings")]. [Randee] was a party to the [Purchase] Agreement, but did not join in this action.
>
> In or about 2010, King and Hinkle agreed to subdivide the property into two parcels, one containing a house and approximately [5] acres and one containing the remaining 46 acres and a pole barn. Under the plan, the [5-]acre lot would be sold, the proceeds [would be] used to pay off all amounts due under the land contract, and the Kings, or [] King, would receive title to the remaining 46 acres free and clear.[3]
>
> The subdivision was completed in late 2010 and the [5-]acre lot [was] sold in January of 2011. Thereafter, the deed to the remaining 46 acres was never conveyed to the Kings. Instead, Hinkle sold the parcel to [Appellants] in 2012. [King's] complaint alleges Hinkle's sale to [Appellants] was a breach of the land

_____

[2] The contract executed on June 1, 1998, is referred to herein as either "the land contract" or "the Purchase Agreement."

[3] King testified that the agreement to subdivide the property and to use the proceeds from the sale of the 5-acre parcel to pay off the Kings' debt under the Purchase Agreement was never put in writing. **See** N.T., 8/30/23, at 42 (King's reasoning, "No. I trusted him. He trusted me. We were family.").

- 2 -

contract and that [Appellants] were on notice of the Kings' interest in the property at the time they purchased the 46[-]acre lot.[4]

Hinkle claims that he terminated the land contract prior to the subdivision, leaving him free to sell the 46[-]acre parcel to Appellants. Hinkle filed a counterclaim against [] King claiming money damages and attorney fees in connection with costs incurred as a result of [the] Kings' alleged breach of the land contract.

[Appellants] contend that they knew nothing about the land contract because it was never recorded, neither the Kings nor Hinkle ever told them about it, and their title search uncovered nothing that would indicate the Kings had an interest in the property. [Appellants] filed a cross-claim against Hinkle averring that if the Kings are found to have a superior interest in the property, then Hinkle is liable to [Appellants] for return of their purchase price under the guarantee of title provided in Hinkle's deed to [Appellants]. They also filed a counterclaim against King based on unjust enrichment, averring that if [Appellants'] deed is voided and the property [is] conveyed to the Kings, then [Appellants] are entitled to compensation for improvements they made to the property.

After a torturous history of discovery, delay, more discovery, discovery motions, dispositive motions, more delay, more discovery, and more dispositive motions, the case made its way to a bench trial before the undersigned on August 30, 2023. All parties appeared and were represented by counsel.

Trial Court Opinion ("TCO I"), 1/31/24, at 1-2.

On January 31, 2024, the trial court entered an order, in which it decreed the following:

**[KING'S] COMPLAINT**

_____

[4] King's complaint contained a breach of contract claim against Hinkle ("Count I"); a specific performance claim against Hinkle ("Count II"); a request for attorneys' fees against Hinkle ("Count III"); a declaratory judgment claim against Hinkle and Appellants ("Count IV"); an ejectment claim against Appellants ("Count V"); and a replevin claim against Appellants ("Count VI"). *See* Complaint, 8/26/14, at 5-11 (unnumbered).

1. On Count I of … King's Complaint against … Hinkle (Breach of Contract), the court finds that although … Hinkle did act in breach of the June 1, 1998 [Purchase] Agreement when he sold the subject property to [Appellants], no damages are awarded due to the court's award of specific performance and ejectment under Counts II and V of the Complaint.

2. On Count II of … King's Complaint against … Hinkle (Specific Performance), the court finds in favor of [King] as follows:

   a. [] Hinkle shall, within fifteen (15) days of the date of this order, deliver a warranty deed to "DAVID H. KING AND RANDEE G. KING" for the real property previously conveyed to [Appellants] by special warranty deed dated May 22, 2012, in conformity with paragraph 9 of the June 1, 1998 [Purchase] Agreement.

   b. [] King shall be responsible for payment of real estate transfer taxes due to the Commonwealth of Pennsylvania and County of Erie under paragraph 9 of the June 1, 1998 [Purchase] Agreement.

3. On Count III of … King's Complaint against … Hinkle (Attorney Fees), all attorney fee claims are denied.

4. On Count IV of … King's Complaint against … Hinkle and [Appellants] (Declaratory Judgment), the court finds:

   a. Upon conveyance of the deed to [the Kings] pursuant to paragraph 2 of this order, all the terms of the June 1, 1998 [Purchase] Agreement shall be satisfied.

   b. The conveyance of May 22, 2012 between … Hinkle and [Appellants] is void.

   c. Unless specifically awarded elsewhere in this order, all other claims at Count IV of [King's] complaint are denied.

5. On Count V of … King's Complaint against [Appellants] (Ejectment), the court finds in favor of [King] as follows:

   a. [Appellants] shall, within fifteen (15) days of the date of this order, permanently vacate the subject property and remove all of their personal property from the subject property.

   b. [Appellants] shall, within fifteen (15) days of the date of this order, pay all currently outstanding property tax bills, if any, for the subject property[.]

   c. All claims for special damages under Count V of the Complaint are denied.

6. On Count VI of … King's Complaint against [Appellants] (Replevin), the court finds in favor of [Appellants].

## [] HINKLE'S COUNTERCLAIMS

7. On Count I of … Hinkle's Counterclaim against … King (Breach of Contract), the court finds in favor of … King.

8. On Count II of … Hinkle's Counterclaim against … King (Attorney Fees), all attorney fee claims are denied.

## [APPELLANTS'] CROSS-CLAIM

9. On [Appellants'] cross-claim against … Hinkle (Breach of Warranty), the court finds in favor of … Hinkle.

## [APPELLANTS'] COUNTERCLAIM

10. On [Appellants'] counterclaim against … King (Unjust Enrichment), the court finds in favor of … King.

Order, 1/31/24, at 1-3 (unnumbered; internal footnote and brackets omitted).

On February 9, 2024, Appellants filed a timely motion for post-trial relief, which was denied by the trial court on February 27, 2024. The next day, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on April 29, 2024, in which it incorporates and expands upon the reasoning for its decision set forth in its January 31, 2024 opinion. Herein, Appellants present the following issues for our review:

1. Whether the trial court lacked jurisdiction in awarding relief to Randee … under Count IV (and Count II) as Randee…, an

- 5 -

indispensable party, was not named in the litigation, therefore depriving the trial court of subject[]matter jurisdiction?

2. Whether the trial court erred in voiding the conveyance pursuant to Count IV of the Complaint, for three reasons: first, given the facts as determined by the trial court and set forth in its January 30, 2024 [o]pinion, there is no legal obligation for a subsequent purchaser of property, here [Appellants], to make an inquiry of King regarding his alleged interest in the property; second, because [Appellants] made a reasonable inquiry to the then party[-]in[-]possession, Hinkle, and/or because King's use of the pole barn for storage of personal property is not sufficient to maintain control of the property and/or constitute open, exclusive possession necessary to impute constructive notice to [Appellants]; and third, [Appellants' m]otion for [n]onsuit should have been granted because King failed to establish facts sufficient to justify relief in his favor?

3. Whether the trial court erred in voiding the conveyance pursuant to Count IV of the Complaint by failing to find King's claim is barred by the doctrine of laches, given King's failure to provide any notice of his alleged interest to [Appellants], despite his acknowledged awareness of the transfer in 2012, until the filing of the underlying litigation more than two years later in 2014[,] and after [Appellants] had owned and occupied the property and paid all expenses associated therewith?

4. In the alternative, whether the trial court erred by finding in favor of Hinkle pursuant to [Appellants' c]ross-[c]laim for breach of the special warranty provision of the May 2012 Deed denying any relief to [Appellants] contrary to the express warranty language of the Deed and contrary to the fact that [Appellants] made a reasonable inquiry to the then party[-]in[-]possession, Hinkle, of any adverse interest in the property prior to the 2012 transfer and by conducting a title search for the 45 [*sic*] acres of property that revealed no evidence of [King] and/or Randee['s] … present interest in the 45[-]acre [*sic*] parcel?

5. In the alternative, whether the trial court erred by finding in favor of King pursuant to [Appellants' c]ounterclaim for unjust enrichment by denying any relief to [Appellants] for real estate taxes paid by [Appellants] for the benefit of [the Kings,] taxes

- 6 -

[the Kings] would have had to have paid had they owned the property during the 12[-]year period at issue?

Appellants' Brief at 10-12.

We begin by addressing Appellants' first issue concerning whether the trial court has subject matter jurisdiction in the underlying litigation, as it is dispositive of this appeal.

Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Issues of subject matter jurisdiction cannot be waived. The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved. Moreover, it is well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void. Subject matter jurisdiction raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction.

***Turner v. Estate of Baird***, 270 A.3d 556, 560 (Pa. Super. 2022) (internal citations and quotation marks omitted). ***See also Hubert v. Greenwald***, 743 A.2d 977, 980 (Pa. Super. 1999) ("The absence of an indispensable party renders any decree or order in the matter void for lack of jurisdiction.").

Here, Appellants aver that the trial court erred in retaining jurisdiction over the underlying litigation, because King failed to join his estranged wife, Randee, who they claim is an indispensable party to this action, depriving the trial court of subject matter jurisdiction. Appellants' Brief at 30. King counters that Randee is not an indispensable party, because the relief granted by the trial court "in no way impairs or infringes upon Randee['s] rights" under the

- 7 -

land contract. King's Brief at 3. For the following reasons, we agree with Appellants.

It is well established that:

A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

*Orman v. Mortgage I.T.*, 118 A.3d 403, 406-07 (Pa. Super. 2015) (internal citations and quotation marks omitted).

Additionally, Pennsylvania Rule of Civil Procedure 2227 governs compulsory joinder and requires that "[p]ersons having only a joint interest in the subject matter of an action … be joined on the same side as plaintiffs or defendants." Pa.R.Civ.P. 2227(a).[5] "If a person who must be joined as a

_____

[5] Compulsory joinder under Rule 2227 must be distinguished from permissive joinder under Rule 2229. *Compare* Pa.R.Civ.P. 2227(a) (**mandating** joinder
*(Footnote Continued Next Page)*

plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder." Pa.R.Civ.P. 2227(b).[6] This Court has long established that Rule 2227(a) requires dismissal of an action where there exists no timely attempt to join a necessary party as a defendant or plaintiff. *See Schutt*, 100 A.3d at 268; *Moorehead v. Lopatin*, 445 A.2d 1308, 1311 (Pa. Super. 1982) ("Where … the plaintiff seeks to proceed against only one person upon a cause of action involving the alleged negligent maintenance of real estate owned by two parties as tenants by the entireties, and where no attempt has been made to amend the complaint to join the spouse within the period allowed by the applicable statute of limitations, … dismissing the complaint is dictated.").

Based on the foregoing rules and principles, we discern that whether the trial court has subject matter jurisdiction in the underlying litigation is dependent on the nature of Randee's interest in King's claims. Thus, we consider Randee's interest with respect to the subject property. Instantly, it is undisputed that both Randee and King — being husband and wife at the

---

of parties having only a joint interest in the subject matter of an action), *with* Pa.R.Civ.P. 2229(a) ("Persons **may** join as plaintiffs [persons] who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action.") (emphasis added).

[6] "Involuntary joinder is necessary because without such joinder an indispensable party is missing and the action cannot proceed." *Altoona Regional Health System v. Schutt*, 100 A.3d 260, 268 (Pa. Super. 2014) (citation omitted).

time — signed the June 1, 1998 Purchase Agreement for the purchase of the 51-acre parcel of land. We further recognize that no deed was ever conveyed to the Kings regarding the subject property.

Under the typical installment land contract, such as in the case at bar, the purchaser takes possession and makes periodic installment payments until the balance of the contract price is paid off. *See Anderson Contracting Co. v. Daugherty*, 417 A.2d 1227, 1231 (Pa. Super. 1979). It is settled law in Pennsylvania that "[t]he moment an agreement of sale is executed and delivered it vests equitable title to the realty in the purchaser." *Yannopoulos v. Sophos*, 365 A.2d 1312, 1314 (Pa. Super. 1976). *See also Payne v. Clark*, 187 A.2d 769, 770 (Pa. 1963) (same).

> The sellers are then relegated to the position of trustees of the real estate, holding the bare legal title for the purchasers who become trustees for the balance of the purchase money for the sellers. Although legal title remains with the sellers until the deed is executed, the equitable interest passes to the purchasers and the sellers' interest becomes personal property even though legal title remains as security for its payment.

*Yannopoulos*, 365 A.2d at 1314. *See also Zitzelberger v. Salvatore*, 458 A.2d 1021, 1023 (Pa. Super. 1983) ("The purchaser becomes equitable owner of the land upon execution of the contract; the seller retains legal title merely as security for payment of the unpaid purchase money."). Hence, regardless of the fact that the Kings have not been deeded legal title to the subject property, they became equitable owners of the 51-acre parcel upon execution of the Purchase Agreement.

In Pennsylvania, "[a] conveyance of real or personal property to a husband and wife, without more, vests in them an estate by the entireties and[,] upon the death of either[,] the survivor takes the whole." *Heatter v. Lucas*, 80 A.2d 749, 751 (Pa. 1951).  Estates by the entireties

> are simply a form of co-ownership, a particular type of 'joint-estate,' held by husband and wife….[7]  Joint tenancies have four unities: interest, title, time[,] and possession….  Tenancies by the entireties … resemble joint tenancies.  All four of the unities are present.  But … [, "]if an estate in fee be given to a man and his wife, they are neither properly joint tenants, nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, per tout et non per my: the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.["]  To the four unities of a joint tenancy therefore is added the unity of the husband and wife as a person in the law….  While a tenancy by entireties resembles a common law joint tenancy in that each spouse owns the whole and therefore is entitled to enjoyment of the entirety and to survivorship, it differs in that neither one has any individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse.

*Madden v. Gosztonyi Savings & Trust Co.*, 200 A. 624, 627-28 (Pa. 1938) (internal citations and footnote omitted).

"The existence of the [entireties] estate depends on the marital relationship."  *Id.* at 628.  As our Supreme Court explained, the placing of property in the names of both husband and wife, "without more, creates an

---

[7] "Common law provides three legal structures for the concurrent ownership of property that have survived into modern times: tenancy in common, joint tenancy, and tenancy by the entirety."  6 Summ. Pa. Jur.2d Property § 6:1 (2d ed.).

- 11 -

estate by the entireties. It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entirety[.]" *In re Holmes' Estate*, 200 A.2d 745, 747 (Pa. 1964) (internal citations omitted). Clear and convincing evidence is needed to overcome the presumption that a husband and wife hold an estate by the entireties. *Id.*

So long as both parties live as married persons, "termination of an entireties estate occurs only by their joint acts." 21 Standard Pennsylvania Practice 2d § 116:4.

> Neither spouse may create or terminate any legal interest in the entireties property or otherwise deal with the property in a manner that would prejudice the rights of the other spouse. Neither spouse may appropriate property for the spouse's own use to exclusion of the other spouse without first obtaining the consent of the other spouse. The only appropriation permitted is that for the mutual benefit of the tenants and actions taken by a spouse concerning entireties property are presumed to inure to the benefit of both the husband and wife.

*Id.* (internal footnote omitted). *See also Madden*, 200 A. at 631 ("[W]here a husband and wife hold a mortgage, the husband has no authority to take a deed to himself and in that way destroy the wife's interest in the mortgage.").

Divorce terminates an entireties estate and creates a tenancy in common. *See Barrett v. Barrett*, 614 A.2d 2, 301 (Pa. Super. 1992) (citing 23 Pa.C.S. § 3507(a) ("Whenever married persons holding property as tenants by entireties are divorced, they shall, except as otherwise provided by an order made under this chapter, thereafter hold the property as tenants in common of equal one-half shares in value, and either of them may bring an

action against the other to have the property sold and the proceeds divided between them.")).[8]  Significantly, however, "[t]he fact that the debtor is currently estranged from their spouse does **not** act to partition an estate held by the entireties."  15 Summ. Pa. Jur.2d Family Law § 3:18 (2d ed.) (emphasis added; citation omitted).

Here, it is uncontested that Randee and King married in 1996, separated in 2009, and divorced in 2019.  **See** Trial Court Opinion ("TCO II"), 4/29/24, at 2 n.2.  Thus, at the time King filed the underlying complaint in August 2014, Randee and King had separated, but they were not legally divorced. Therefore, they remained equitable owners of the subject property as tenants by the entireties.  **See Madden**, **supra**; 15 Summ. Pa. Jur.2d Family Law § 3:18 (2d ed.).  We have previously determined that, "in actions intended to affect the title to property which is either held or claimed by tenants by the

_____

[8] When individuals own real estate as tenants in common, "they 'own and possess in equal shares an undivided interest in the whole property.'" **Simone v. Alam**, 303 A.3d 140, 144 (Pa. Super. 2023) (quoting **In re Engel's Estate**, 198 A.2d 505, 507 (Pa. 1964)).  In other words, "there is unity of possession but separate and distinct titles."  **Id.** at 144-45 (quoting **In re Estate of Quick**, 905 A.2d 471, 474 (Pa. 2006)).  It has long been established that "[o]ne tenant in common is without authority to bind his cotenants by an agreement concerning the use or control, or affecting the title, of the joint property."  **Caveny v. Curtis**, 101 A. 853, 854 (Pa. 1917) (citation omitted). **But cf. In re Sale of Property of Dalessio**, 657 A.2d 1386, 1387 n.1 (Pa. Cmwlth. 1995) ("A tenant in common may, without the consent of his cotenant, sell, convey, or dispose of his undivided interest in the property, but in so doing he must not interfere with the rights of his cotenant." (citing **Werner v. Quality Service Oil Co., Inc.**, 486 A.2d 1009 (Pa. Super. 1984)).

entireties, **both spouses are indispensable parties** and **must be joined**."

*Orman*, 118 A.3d at 407 (quoting *Miller v. Benjamin Coal Co.*, 625 A.2d 66, 68 (Pa. Super. 1993)) (emphases added).

King's complaint sought, *inter alia*, specific performance of the Purchase Agreement, as well as declaratory relief, which included voiding the conveyance between Hinkle and Appellants, and conveying the property to himself. *See* Complaint at 7 ¶ 2 (requesting that the trial court declare "the conveyance of May 22, 2012 between … Hinkle and [Appellants] void"); *Id.* at 7 ¶ 4 (requesting relief in the form of an order directing Hinkle "to perform under the June 1, 1998 Agreement and convey the subject premises to [King]"). There is no question that this action was intended to affect the title to the subject property. Having already determined that the Kings held the equitable title to the subject property as tenants by the entireties at the time King's complaint was filed, we are constrained to deem Randee an indispensable party. *See Orman*, 118 A.3d at 407.[9]

_____

[9] Even if we were to consider the fact that the Kings' divorce was finalized prior to the entry of judgment, based on the record before us, we must presume that they co-owned the equitable title to the subject property as tenants in common at the time of judgment and Randee would, therefore, still be an indispensable party. *See Simone*, 303 A.3d at 144 (dismissing negligence action brought against only one co-owner of real estate for failure to join an indispensable party, where two brothers owned the property as co-tenants in common; explaining that co-tenants in common own equal shares of an **undivided** interest in the **whole** property); *see also* 23 Pa.C.S. § 3507(a) (requiring joinder of persons having only a joint interest in the subject matter of an action). No evidence has been presented that either Randee or King conveyed their interest in the property to the other. *See* King's Brief at
*(Footnote Continued Next Page)*

Randee is not a party to this matter and there is no evidence in the record indicating that King ever attempted to join her as a party to his complaint. Consequently, we conclude that the trial court lacked subject matter jurisdiction in the underlying matter, rendering its March 27, 2024 judgment void; thus, the case should have been dismissed. **See** Pa.R.Civ.P. 2227(a) (requiring dismissal of an action where there exists no timely attempt to join a necessary party); **Turner**, 270 A.3d at 560 ("The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction."); **id.** (declaring that "a judgment or decree rendered by a court which lacks jurisdiction of the subject matter … is null and void"); **Hubert**, 743 A.2d at 980 ("The absence of an indispensable party renders any decree or order in the matter void for lack of jurisdiction."). **See also Orman**, 118 A.3d at 407-08 (concluding that where both husband and wife signed a mortgage, the husband was an indispensable party to the wife's quiet title action and, due to the wife's failure to join him as a party, "the trial court lacked subject matter jurisdiction to enter judgment in favor or against any party…. The proper remedy was always to dismiss [the wife's] complaint without prejudice, rather than enter any form of judgment.").

Additionally, we appreciate that the trial court attempted to grant relief without impairing or infringing upon Randee's rights by directing Hinkle to deliver a warranty deed to both of the Kings "for the real property previously

---

4 (hinting at the possibility of a partition action or a quiet title action between the Kings in the future).

conveyed to [Appellants] by special warranty deed dated May 22, 2012….” Order, 1/31/24, at ¶ 2a. **See also** TCO II at 2-3 (opining that the court fashioned its relief “consistent with [Appellants’] position that the resulting deed should go to both Kings, thereby negating their argument … that no relief can be granted without impairing or infringing upon [Randee’s] rights”) (internal quotation marks omitted). However, as we have determined, the trial court did not have subject matter jurisdiction to enter any such relief in this matter. Notwithstanding, we note that the relief as fashioned by the trial court would most certainly infringe upon Randee’s rights, as it directs Hinkle to issue a deed for only a portion of the 51-acre parcel of real estate for which the Kings entered into the Purchase Agreement. **See** TCO I at 1-2 (explaining that the 51-acre lot was subdivided and that the 5-acre portion containing the house was sold to a third party in January of 2011); Order, 1/31/24, at ¶ 2a. (directing Hinkle to convey the 46-acre lot with the pole barn to the Kings).

Given that Randee co-signed the Purchase Agreement, making her a joint equitable owner of the subject property, and all that has since transpired with regard to that property, *i.e.*, the subdivision of the 51-acre parcel, the sale of the 5-acre lot in January 2011, and the purported sale of the 46-acre lot to Appellants, we find it difficult to surmise how justice can be done here in Randee’s absence. **See Orman**, 118 A.3d at 407 (“In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.”).

Accordingly, we vacate the judgment entered on March 27, 2024, and remand for the entry of an order dismissing King's complaint.[10]

Judgment vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2025

---

[10] Due to our disposition regarding Appellants' first issue, we need not address the merits of their remaining claims.